SOUTHEASTERN EXPRESS CO. *v.* KIMBALL.*

(Division B.   Oct. 27, 1924.)

[101 So. 563.   No. 24343.]

CARRIERS.   *Delivery of goods held to exonerate carrier from liability if delivered to right person, though receipted for under trade-name other than that used in addressing goods.*

Where goods are shipped by a trader through an express company to a person doing business under a trade-name, and the goods are actually delivered at the address to which it is consigned to the person doing the business under the trade-name, it is a good delivery even though the receipt is signed in another trade-name. If the person who orders the goods receives them from the carrier, the delivery is good, and the carrier is not liable to the shipper for a misdelivery.

*Headnote 1.   Carriers, 10 C. J., section 368.

APPEAL from circuit court of Chickasaw county.
HON. T. E. PEGRAM, Judge.

Action by G. R. Kimball against the Southeastern Express Company. From a judgment for plaintiff, defendant appeals. Reversed and judgment rendered.

*C. M. Wright* and *Bozeman & Cameron,* for appellant.

In this conception of the law, the judge was manifestly in error. The only duty of the Express Company was to

deliver these shipments to the man to whom they had been sold. It matters not if he adopted some fictitious name, or what name he received them under, if it be a fact that the man who ordered the shipments actually received them, the Express Company performed its full duty.

The court below evidently recognized that there was no dispute on this proposition. The court seemed to take it for granted that it was without dispute that Seymour ordered the shipments and received the shipments, but fell into the error of assuming that the Express Company was liable, if the evidence did not show that Mr. Kimball knew that Mr. Seymour traded under both the names set forth in this record. As to this, we submit that there was no dispute. A reading of the communications which admittedly passed between the parties, shows indisputably that Mr. Kimball did have notice of that fact.

We submit that if the Express Company delivered the shipments to the man who ordered them, there was no liability and the court should have granted a peremptory instruction. *Abasi Bros.* v. *Louisville & Nashville R. R. Co.,* 115 Miss. 803, 76 So. 665; *Hentz* v. *Steamship Idaho,* 93 U. S. 975, 23 L. Ed. 978; *Dunbar* v. *Boston & Providence R. R. Corp.,* 110 Mass. 26, 14 Am. Rep. 576.

Along the same line is the case of *Fulton Bag & Cotton Mills* v. *Hudson Nav. Co.,* 157 Fed. 987; *Lakeshore & M. S. R. R. Co.,* v. *Luce,* 11 Ohio C. C. 543; *Price* v. *Oswego & S. R. R. Co.,* 58 Barb. 599; *Wilson* v. *Adams Express Co.,* 27 Mo. App. 360; *Seibert* v. *Philadelphia & R. Ry. Co.,* 15 Pa. Sup. Ct. 435.

Certainly, it was the shipper's action in the present case, in dealing with Seymour, which caused the delivery to him. Undisputedly the Vardaman Company had done its dealings entirely with Mr. Seymour, and he produced the original correspondence, and also the original invoices. There was certainly no liability on the Express Company in the present case. 4 Elliot on Railroads (3

Ed.), sec. 2296, and authorities cited therein; *Pacific Exp. Co.* v. *Hertzberg,* 42 S. W. 795, 17 Tex. Civ. App. 100; *So. Express Co.* v. *Oskamp,* 14 O. Cir. Ct. R. 176, 7 O. C. D. 417; *Samuel* v. *Cheney,* 135 Mass. 278, 46 Am. 467; *Bush* v. *St. Louis, K. C. & N. R. R. Co.,* 3 Mo. App. 62; *So. Express Co.* v. *Fank,* 78 S. E. 197, 12 Ga. App. 447, 10 C. J. 265 et seq.; *So Express Co.* v. *Williams,* 99 Ga. 482, 27 S. E. 473; *McKean* v. *McIvor,* L. R., 6 Exch. 36; *R. R. Co.* v. *Lowe,* 101 Ga. 320, 28 S. E. 876; *Stevison* v. *Jackson,* 58 N. H. 138; *Viner* v. *New York, etc., Co.,* 50 N. Y. 23; *R. R. Co.* v. *McFadden,* 89 Tex. 138, 33 S. W. 853; *Wells* v. *Express* Co., 44 Wis. 342.

From the foregoing authorities, the true rule is shown to be that the only duty of the Express Company was to deliver the shipment to the man who ordered it and who had the dealings with the shipper. It is manifest that it was of no moment whether Mr. Kimball knew that he was dealing with Seymour or not. The liability of the Express Company could be in no way affected by this.

*B. N. Knox,* for appellee.

The only questions involved in this lawsuit as I see it are: Were the two concerns the same, and, if so, did Kimball have knowledge of that fact, or were the circumstances sufficient to put him on notice. If they were not the same, and Seymour states they were not, then the delivery was unauthorized and the defendant made same at its peril and is liable to plaintiff for the wrongful delivery.

If the lower court was correct in allowing the case to go to the jury on the question as above stated, then the jury returned its verdict, the verdict should not be disturbed on the facts. It is very evident that the court was correct in letting the jury pass on that controverted point, as the evidence was in sharp conflict as to whether or not they were one and the same concern, even witnesses for the defendant stating they were not, especially Seymour.

The Dunbar case quoted by appellant is not applicable to the case at bar, because there was no dispute that Dunbar and Young were not the same person, and further because Dunbar was known to the delivery clerk of the carrier, and who did not represent himself to be Young, but the agent of Young.

In the case at bar, the C. O. D. receipt, signed by the Atlanta Produce and Packing Company was returned to the shipper, showing that the concern to whom it was shipped signed for it—in other shipments.   Therefore, since Seymour says he never acted under that name, there must have been a concern in Atlanta doing business as the Atlanta Produce and Packing Company, other than the man Seymour, according to his sworn testimony. This was the litigated point and was decided in favor of appellee.   For the reason that the facts, as interpreted by the jury, bore out the contention that they were not one and the same, the authorities submitted by appellant are not applicable.   They are citing authorities supporting a proposition of law that is not supported by the facts in the case at bar.

The rule in cases based on facts similar to the case at bar is well settled.   The duty of the carrier is not merely to convey safely the goods intrusted to it, but also to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination. *So. R. R. Co. v. Webb,* 39 So. 262, 111 Am. St. Rep. 45.   This duty to deliver to the proper person is absolute. *Chicago v. Railway Company,* 22 L. R. A. (N. S.) 1107.   No obligation of the carrier is more rigidly enforced than that which requires delivery to the consignee. *Furman v. Union Pacific,* 13 N. E. 587.   No question of care arises for in such cases the carrier acts at its peril and is liable regardless of negligence. *Railroad Company v. Wright,* 58 N. E. 559; *Schlicting v. Railroad Company,* 96 N. W. 959. It is uniformly held that where one not the consignee, by means of any fraudulent device, procures the delivery of

the goods to himself, the carrier and not the consignor is the one on whom the fraud is practiced, and who must bear the loss, being liable to the consignor for conversion of the goods. *Pacific Express Co.* v. *Shearer,* 37 L. R. A. 177, 48 N. E. 816. The rule applies with full force and effect although the consignee to whom the goods are billed is a fictitious person or firm in whose name the goods have been ordered. Here, also it is the duty of the carrier to warehouse the goods for the consignor. *Price & Oswego* v. *Railroad Co.,* 50 N. Y. 213, 217, 220.

The appellant here also contends that there was no mis-delivery—that the goods were delivered to Seymour the party that ordered them, but under the two above decisions the company is liable, and rightly so, because Kimball was dealing with the Atlanta Produce and Packing Company and not with P. W. Seymour. The only difference between the facts in the case at bar and the foregoing case, is in the names of the parties. The fact that Seymour had possession of the invoice did not relieve the defendant company. *Barkhouse case,* 109 Ala. 543, 13 So. 543. See note (a) "Erroneous view" at bottom page 264, 10 C. J., in which it is held that the view expressed in the Wilson case and other cases cited by appellant was erroneous. Also see following note 76 (a).

ETHRIDGE, J., delivered the opinion of the court.

The appellant was defendant below and the appellee was the plaintiff. The plaintiff was engaged in dealing in poultry and other produce under the trade-name of Vardaman Produce Company. He was also agent of the Southeastern Express Company at Vardaman, Miss. Through the latter months of the year 1921 the plaintiff sold certain produce, namely, poultry and eggs, to the Atlanta Produce & Packing Company and to the National Produce & Packing Company of Atlanta, Ga. Both these trade-names did business at the same street number, and it appears that one Paul W. Seymour was the person who

operated the business at that point.  A good deal of cor-respondence and many telegrams passed between the Vardaman Produce Company and the said trade-names of Atlanta, Ga.  On the 8th of December, 1921, the National Produce & Packing Company, operated by Paul W. Seymour, telegraphed to the Vardaman Produce Company at Vardaman, Miss., as follows:

"Your shipment received under name of Atlanta Produce & Supply Co.  Please correct other shipments and mail to read National Produce & Packing Company. Wire us best prices on poultry, turkeys and eggs for next week shipments.

"[Signed] National Produce & Packing Co."

On December 10, 1921, the Vardaman Produce Company sent the following telegram:

"National Produce & Packing Co.  145 South Pryor St. Atlanta, Ga.  Answering we accept your offer next week's shipment.  [Signed] Vardaman Produce Co."

On December 12, 1921, the National Produce & Packing Company sent the following telegram to the Vardaman Produce Company at Vardaman, Miss.:

"Wire and letter received.  Wire at once what you are shipping.  We want poultry and eggs both.  Poultry selling good.  Give us best price on turkeys for this week's shipment and amount you can ship.  How much poultry can we expect this week."

On December 13, 1921, the Vardaman Produce Company sent the following telegram to the Atlanta Produce & Packing Company, at 145 South Pryor street, Atlanta, Ga.:

"Wire received.  Will ship ten to fifteen coops poultry about forty cases eggs this week.  Turkeys will not move until next week.  Will wire you Sunday price.  Our money short.  Are drawing draft today.  Five Fifty Four Half Please honor.  We paid exchange here. If check mailed for anything we have shipped you stop payment and we will return your check."

On December 14, 1921, the appellee sent the following letter to the National Produce & Packing Company, 145 South Pryor street, Atlanta, Ga.:

"Gentlemen: "As per our wire yesturday we were forced to draw on you for amount due us on account heavy movement of peas and shortage of money and thank you for honoring our draft. We will be forced for a week or two to ship C. O. D. as we are buying you some poultry at Calhoun City and haven't the money to pay for it and can borrow from our bank here on what eggs and chickens we ship from here C. O. D. This will not put you to any expense for we will pay all charges for return of money.

"Am returning your check for $150 received this morning as this amount is included in our draft for $554.50 and we paid the charges for exchange at this end. If they charge you again at that end mail us receipt for it and will mail check to cover.

"We are offered at present thirty-five cents per pound for turkeys f. o. b. our track, but asking thirty-seven cents. If you can use at this price shipped C. O. D. we to pay return charges on money. Wire us upon receipt of this letter.

"[Signed] G. R. Kimball,

"Owner Vardaman Produce Company."

On December 14, 1921, the National Produce & Packing Company sent the following telegram to the Vardaman Produce Company, at Vardaman, Miss.:

"Shipment here for Atlanta Produce & Packing Company. Have express company release C. O. D."

There is much other correspondence in the record addressed to the Atlanta Produce & Packing Company, 145 South Pryor street, Atlanta, Ga., and also to the National Produce & Packing Company at the same address. It does not appear from the record that there was any corporation by either name at the said address, and it does not appear that any other person than Seymour did business at that place. It appears that the shipment involved

sent to the Atlanta Produce & Packing Company was inquired about by Seymour prior to its arrival in Atlanta and that he stated that he had ordered this produce and was expecting it. When the consignment arrived, it was carried to 145 South Pryor street, in Atlanta, Ga., and delivered there to Seymour, who displayed to the agent of the express company *indicia* of ownership, and this agent testified that they delivered said shipment to the Atlanta Produce & Packing Company, and there was no one there except Seymour and that he was in charge and had correspondence which he displayed. Seymour was introduced and testified that he ordered the produce from the Vardaman Produce Company and that he received it from the express company. He, however, did not pay for it, and it appears that it was released from the C. O. D. which the original shipment was made by the letter above referred to and set out. A draft was drawn by Kimball in the name of the Vardaman Produce Company for this shipment on the National Produce & Packing Company, but this draft was not paid. Thereupon the matter was placed in the hands of an attorney in Atlanta, Ga., by the Vardaman Produce Company by Kimball, the plaintiff, who was the owner. The attorney conferred with Seymour, who offered to pay three hundred dollars cash in settlement, which settlement was recommended by the attorney to Kimball, owner of the Vardaman Produce Company, and it appears that an agreement was reached by which it would be accepted. Seymour gave a check for about one hundred and thirty-five dollars and some other checks, which other checks were not accepted in full payment, and Seymour was informed by the attorney for Vardaman Produce Company, or Kimball, that if the account was not paid the amount which was collected would be only credited on the amount due and that the account would not be settled except for three hundred dollars cash. The check for one hundred and thirty-five dollars was transmitted to the Vardaman Produce Com-

pany, which then addressed a letter to the express company at its Atlanta, Ga., office, complaining about the shipment and tendering the check received to the express company which that company refused to accept. Whereupon this suit was brought.

Seymour was introduced as a witness and testified that he did business at 145 South Pryor street, Atlanta, Ga., under the trade-name of the National Produce & Packing Company, but that he did not do business as the Atlanta Produce & Packing Company, and that he did not have any dealings with complainant under that name. The proof shows there was no such concern doing business in Atlanta as the Atlanta Produce & Packing Company, and that the only business conducted at 145 South Pryor street, Atlanta, was the business conducted by Seymour, and that he was in charge thereof and the shipments were delivered to him.

Both plaintiff and defendant requested a peremptory instruction at the conclusion of the evidence which the court refused to give and submitted the case to the jury as to whether the Atlanta Produce & Packing Company and the National Produce & Packing Company were one and the same concern. The jury found for the plaintiff under general instructions.

In our opinion the evidence shows conclusively and without dispute that the only person who did business at 145 South Pryor street, Atlanta, Ga., was Seymour, and that he conducted his business under trade-names at that point. The correspondence and dealing between the concerns show that it was in fact all the same concern; that is, that it was Seymour who was doing business. It conclusively appears that Seymour ordered the particular shipment and the shipment was delivered to him. It was consigned to Seymour under the trade-name of Atlanta Produce & Packing Company and signed for by him under the name of the National Produce & Packing Company. The letters in evidence received by the plaintiff

show that he was advised that the National Produce & Packing Company was the correct name under which Seymour did business. The plaintiff may not have known that it was an individual doing business, but if he in fact did business with an individual under a trade-name and the individual with whom he was trading actually received the shipment which was sent to the individual under his order, as the correspondence clearly shows it was, then he cannot complain that the receipt was improperly signed. His customer procured the shipment consigned to him, and the names under which the transaction was consummated are immaterial. The peremptory instruction requested by the defendant should have been granted.

The judgment will therefore be reversed, and judgment entered here for the appellant.

*Reversed, and judgment here.*